**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

FIBRXL PERFORMANCE, INC., FIBRXL INDUSTRIAL INC., FIBRXL LLC, and FIBRXL HPF LLC,

Plaintiffs,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

Defendants.

Court No. 26-04972

## COMPLAINT

1. FibrXL Performance, Inc., FibrXL Industrial Inc., FibrXL LLC, and FibrXL HPF LLC ("Plaintiffs") are U.S.-based importers of merchandise subject to the challenged duties.

2. Beginning in February 2025, President Trump issued a series of executive orders under the International Emergency Economic Powers Act ("IEEPA"), which imposed substantial tariffs, including on imports from the foreign countries from which Plaintiffs source their imports ("IEEPA tariffs").

3. As this Court, the Federal Circuit, and the U.S. Supreme Court have held, IEEPA does not authorize the IEEPA tariffs. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, 222 L. Ed. 2d 1231 (Sept. 9, 2025).

4. On February 20, 2026, the Supreme Court held that "IEEPA does not authorize the President to impose tariffs," but did not address how importers would receive refunds of the IEEPA tariffs that they paid. *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (Feb. 20, 2026). Accordingly, Plaintiffs respectfully request a full refund of all IEEPA tariffs that they paid, with interest as provided by law.

## PARTIES

5. FibrXL Performance, Inc. is a U.S.-based company, incorporated in the State of Virginia.

6. FibrXL Industrial Inc. is a U.S.-based company, incorporated in the State of Virgina.

7. FibrXL LLC is a U.S.-based company, organized in the State of Virginia.

8. FibrXL HPF LLC is a U.S.-based company, organized in the State of Virginia.

9. Defendant U.S. Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant the United States of America received the unlawful IEEPA tariffs and is the statutory defendant under 5 U.S.C. Section 702 and 28 U.S.C. Section 1581(i)(1)(B).

12. Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i), and Plaintiffs are entitled to maintain this action under 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc.*, 149 F.4th at 1334.

14. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585.

15. In a civil action under 28 U.S.C. § 1581, the Court may enter a money judgment against the United States and order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiffs have standing because they are the importers of record for goods subject to the unlawful IEEPA tariffs collected by CBP. As a result of the unlawful executive orders, Plaintiffs paid unlawful duties and were injured.

## BACKGROUND

### I. President Trump Orders a Series of Tariffs, Invoking IEEPA.

#### A. The IEEPA Tariffs

17. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China, asserting that a purported national emergency justified each tariff under IEEPA (collectively, the "Trafficking Tariff Orders").

18. Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* (the "Canada Tariff Order"), imposed a 25% tariff on imports from Canada, subject to certain exceptions, purportedly justified by opioid trafficking.[1]

19. Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border* (the "Mexico Tariff Order"), imposed an additional 25% tariff on imports from Mexico, purportedly justified by the "influx of illegal aliens and illicit drugs into the United States."[2]

---

[1] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

20. Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* (the "China Tariff Order"), imposed an additional 10% *ad valorem* tariff on products from China, on top of existing duties, also purportedly justified by a national emergency due to opioid trafficking.

21. Four days later, on February 5, 2025, the President issued Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (the "February 5 Amendment").[3]

22. On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (the "March 3 Amendment").[4] The March 3 Amendment raised the incremental tariffs on imports from China to 20%, stating that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.*

23. On April 2, 2025, President Trump issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits* (the "Reciprocal Tariff Order").[5] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* These higher country-specific tariffs range from 11% to 50%. *Id.* The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.*

24. On April 8, 2025, President Trump issued Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's*

---

[3] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).
[4] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[5] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

*Republic of China*, raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%.[6]

25. The next day, President Trump issued Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, which ordered a 90-day suspension for the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%.[7] Combined with the 20% trafficking tariff on imports from China, most imports from China faced a minimum 145% IEEPA tariff.

26. In Executive Order 14298 of May 12, 2025, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, Executive Order 14334 of August 11, 2025, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, and Executive Order 14358 of November 4, 2025, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, President Trump suspended the higher tariff rates imposed on China under Executive Order 14257, as amended, with the latest suspension set to expire on November 10, 2026.

27. In Executive Order 14326 of July 31, 2025, *Further Modifying the Reciprocal Tariff Rates*, President Trump modified the Reciprocal Tariff Order to set forth new country-specific reciprocal tariff rates effective August 7, 2025.

28. In Executive Order 14325 of July 31, 2025, President Trump raised the Canada trafficking tariff rate to 35%, effective August 1, 2025.

29. In Executive Order 14357 of November 4, 2025, President Trump reduced the 20% trafficking tariff on imports from China under the China Tariff Order to 10%.

---

[6] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).
[7] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* 90 Fed. Reg. 15,625 (Apr. 9, 2025).

30. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al.* *v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). This Court held that the orders and the imposition of the IEEPA tariffs were unlawful, and the Federal Circuit, sitting *en banc*, affirmed.

31. On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc.*, slip op. at 20 ("[W]e hold that IEEPA does not authorize the President to impose tariffs.").

32. In this Complaint, Plaintiffs challenge only those orders that this Court, the Federal Circuit, and/or the Supreme Court already have held to be unlawful (the "Challenged Tariff Orders").

**B. Defendants' Implementation of the Unlawful Tariffs**

33. CBP is charged with the assessment and collection of duties, including the IEEPA tariffs. *See* 19 U.S.C. §§ 1500, 1502.

34. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the Harmonized Tariff Schedule of the United States ("HTSUS").[8] CBP classifies merchandise imported into the United States consistent with the HTSUS. 19 U.S.C. § 1202.

35. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

36. The United States International Trade Commission (the "USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006.

37. CBP is responsible for assessing and collecting any tariffs on imported goods, after confirming the HTSUS classification of the goods, according to rates established by HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

[8] Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, 102 Stat. 1107 (1988).

38. In implementing the President's Executive-Order-based tariff regime, Defendants revised the HTSUS, such that goods subject to the Challenged Tariff Orders required new, secondary tariff codes.

39. Following the Supreme Court's decision in *Learning Resources*, this Court directed CBP to liquidate "any and all unliquidated entries that were entered subject to the IEEPA duties," without regard to the IEEPA tariffs, and to reliquidate "[a]ny liquidated entries for which liquidation is not final" without regard to the IEEPA tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, at 2–3 (Ct. Int'l Trade Mar. 5, 2026), ECF No. 29 (amended order).

40. Thereafter, CBP constructed the Consolidated Administration and Processing of Entries (CAPE) system to process refunds on the IEEPA tariffs. *See id.*, ECF No. 47.

41. CAPE became operational on April 20, 2026. *See e.g.*, *In re Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)*, No. 25-00078 (Ct. Int'l Trade Jul. 15, 2026), ECF No. 25-2.

42. At that time, finally liquidated entries remained outside the scope of the CAPE system because the government took the position that a court order directing the reliquidation of such entries would be necessary to provide it with the authority to reliquidate them. *Id.*

**C. Liquidation**

43. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

44. Typically, when goods enter (*i.e.*, are imported into) the United States for consumption, the importer of record pays an estimated duty on the *entry* based on its entry summary, which asserts a value, origin, and the HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the entry summary and may inspect the goods.

45. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

46. Once CBP determines the final duty amount, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(a).

47. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Liquidation typically occurs automatically by operation of law. CBP tries to liquidate entries 314 days after the date of entry of the goods and will usually post a notice on its website.

48. Following liquidation, an importer of record has 180 days to file a protest, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[9] But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

49. With respect to reliquidation of entries to effect refunds of tariffs paid pursuant to the Challenged Tariff Orders, this Court has ruled that, "[h]aving convinced this court to accept that importers who paid IEEPA tariffs will be able to receive refunds after reliquidation, and having benefited from the court's subsequent conclusion that importers will not experience irreparable harm as a consequence of liquidation, the Government cannot later "assume a contrary position" to argue that refunds are not available after liquidation." *AGS Co. Auto. Sols. v. U.S. Customs & Border Protection, et al.*, No. 25-00255, slip op. 25-154 (Dec. 15, 2025).

50. On July 15, 2026, this Court issued an order providing CBP with the legal authority to reliquidate, without regard to duties imposed under IEEPA, "entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA." *In re Tariffs Collected*, No. 25-00078, at 4.

## II. Plaintiffs Paid Unlawful IEEPA Tariffs.

51. Plaintiffs paid unlawful IEEPA tariffs imposed by the Challenged Tariff Orders.

---

[9] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

52. Plaintiffs' imports on which the IEEPA tariffs were imposed entered the United States from foreign countries under new HTSUS codes.

53. Plaintiffs have been unable to obtain a refund for the unlawful IEEPA tariffs imposed on finally liquidated entries.

54. Plaintiffs respectfully request a full refund of the unlawful IEEPA tariffs that they paid, with interest as provided by law.

## STATEMENT OF CLAIM

### COUNT I: REFUND OF THE UNLAWFUL IEEPA TARIFFS PAID BY PLAINTIFF

55. Plaintiffs incorporate paragraphs 1-54 above by reference.

56. In *V.O.S. Selections, Inc.* this Court and the Federal Circuit held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods pursuant to IEEPA. 772 F. Supp. 3d. at 1383

57. On February 20, 2026, the Supreme Court affirmed the Federal Circuit's judgment and held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc.*, slip op. at 20.

58. IEEPA does not authorize the imposition of tariffs or duties on imports.

59. Plaintiffs respectfully request an order requiring the Defendants to refund all the IEEPA tariffs collected from Plaintiffs, with interest as provided by law.

60. To effect a refund of all the IEEPA tariffs collected from Plaintiffs, Plaintiffs respectfully request an order reliquidating any and all such liquidated entries.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Reliquidate entries as to which Plaintiffs have paid IEEPA tariffs, if necessary to effect a refund of those IEEPA tariffs;

b. Order the United States to refund to Plaintiffs the IEEPA tariffs collected on Plaintiffs' entries, with interest as provided by law; and

c. Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action;

d. Grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: November 3, 2026

*<u>/s/ Raechel K. Anglin</u>*
Raechel K. Anglin
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.373.6235 Fax: 202.739.3001
raechel.anglin@morganlewis.com

Casey Weaver
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
Telephone: 713.890.5409 Fax: 713.890.5001
casey.weaver@morganlewis.com

Katelyn M. Hilferty
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.5674 Fax: 202.739.3001
katelyn.hilferty@morganlewis.com

*Counsel for Plaintiffs*